# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GEORGIANNA I. PARISI,

                Plaintiff,    :    Case No. 3:14-cv-346

                                                   District Judge Thomas M. Rose
- vs -                                 Magistrate Judge Michael R. Merz

MATHIAS HECK, JR., et al.,

                Defendant.    :

## REPORT AND RECOMMENDATIONS

      This case is before the Court on Motion for Judgment on the Pleadings by Defendants Dayton Bar Association, John Ruffolo, Brian Wildermuth, and Jonathon Beck (the "DBA Defendants")(Doc. No. 22) and a parallel motion by Defendants Debra Bonifas Armanini, Mathias Heck, Jr., Sarah V. Schenk[1], and Thomas Shaw (the "Prosecutor Defendants")(Doc. No. 28). Additional filings being considered on these Motions are Doc. Nos. 25, 31, 32, 33, 36, and 38.

      Motions for judgment on the pleadings are dispositive within the meaning of Fed. R. Civ. P. 72 and 28 U.S.C. § 636 and therefore require a report and recommendations from an assigned Magistrate Judge, rather than a decision.

---

[1] Variant spelling of this Defendant's last name appear at different points in the motion papers.

1

**Plaintiff's Amended Complaint[2]**

Plaintiff alleges that the Defendants conspired with one another to deprive her of her license to practice law in violation of her rights to equal protection of the laws (First Claim for Relief), substantive due process (Count II), and procedural due process (Third Claim for Relief).[3] She therefore brings this action under 42 U.S.C. § 1983.[4]  As relief she seeks compensatory and punitive damages, fees and costs, and injunctive relief to void the Settlement Agreement entered into between herself and the Dayton Bar Association in settlement of an ethics violation complaint with the Ohio Supreme Court (Amended Complaint, Doc. No. 3, PageID 83).[5]

The DBA Defendants seek dismissal on grounds that absolute immunity shields them from any money damages and that the abstention doctrine or lack of standing on Ms. Parisi's part bars injunctive relief.

The Prosecutor Defendants seeks dismissal on the grounds of absolute prosecutorial immunity, qualified immunity, and failure of the Amended Complaint to state a claim for relief; they join in the DBA Defendants' objection to injunctive relief.

---

[2] Plaintiff filed an amended complaint before any Defendant responded.  She did not re-attach the exhibits to Complaint, but the Court treats them as if she had.
[3] The switch in labeling the claims is Plaintiff's.
[4] A reference to 42 U.S.C. § 1985 is deemed surplusage in the absence of any allegations of class-based animus.
[5] When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page.  The attention of the parties is directed to this Magistrate Judge's Standing Order of May 8, 2014, which provides in pertinent part "All references to the record in this Court must be to the filed document by title, docket number, and PageID reference.  (E.g., Defendant's Motion to Dismiss, Doc. No. 27, PageID ___.)"  The large majority of cases before this Magistrate Judge are habeas corpus cases with large state court records and correct citation to the record is critical to judicial economy.  Therefore, nonconforming filings will be stricken.

**Legal Standard for Judgment on the Pleadings**

In ruling on a motion for judgment on the pleadings, the Court must accept all well-pleaded material allegations of the complaint as true. *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001); *Paskvan v. City of Cleveland Civil Serv. Comm'n.*, 946 F.2d 1233, 1235 (6th Cir. 1991), *citing Beal v. Missouri Pacific R.R.,* 312 U.S. 45, 51 (1941). The Court must then decide whether the moving party is entitled to judgment as a matter of law. *Lavado v. Keohane,* 992 F.2d 601, 605 (6th Cir. 1993). This is the same standard applied in deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Tucker v. Middleburg-Legacy Place,* 539 F.3d 545, 549 (6th Cir. 2008); *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). When a defendant attaches to a motion for judgment on the pleadings documents which are referenced in but not attached to the complaint, the court may consider the motion as being made under Rule 12(c), rather than converting it to a motion for summary judgment. *Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997).

The test for dismissal under Fed. R. Civ. P. 12(b)(6) has been re-stated by the Supreme Court:

> Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232,

> 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

> [W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, "'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" 5 Wright & Miller § 1216, at 233-234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F. Supp. 643, 645 (D. Hawaii 1953) ); see also *Dura [Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)], at 346, 125 S.Ct. 1627, 161 L. Ed. 2d 577; *Asahi Glass Co. v. Pentech Pharmaceuticals, Inc*., 289 F. Supp. 2d 986, 995 (N.D.Ill.2003) (Posner, J., sitting by designation) ("[S]ome threshold of plausibility must be crossed at the outset before a patent antitrust case should be permitted to go into its inevitably costly and protracted discovery phase").

*Twombly*, 550 U.S. at 558 (*overruling Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and specifically disapproving of the proposition from *Conley* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545 (6th Cir. 2007). In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court made it clear that *Twombly* applies in all areas of federal law and not just in the antitrust context in which it was announced.

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, *citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation.")

4

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*], at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.,* at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint,

>they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678; *see also Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008), *citing League of United Latin Am. Citizens. v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)(stating allegations in a complaint "must do more than create speculative or suspicion of a legally cognizable cause of action; they must show entitlement to relief"); *see further Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009); *Tam Travel, Inc. v. Delta Airlines, Inc. (In re Travel Agent Comm'n Antitrust Litig.)*, 583 F.3d 896, 903 (6th Cir. 2009); *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046 (6th Cir. 2011) (holding a plaintiff is not entitled to discovery to obtain the necessary plausible facts to plead.)

Under *Iqbal*, a civil complaint will only survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. ...

## ANALYSIS

**Background Facts**

Georgianna Parisi is an attorney at law admitted to practice before the Ohio Supreme Court and a member of the bar of this Court. The Dayton Bar Association has a Grievance Committee certified by the Supreme Court of Ohio to investigate alleged violations of attorneys' ethical obligations.

On a prior occasion, the Dayton Bar Association prosecuted a grievance against Plaintiff that resulted in a finding of professional misconduct and imposition of sanctions by the Ohio Supreme Court. *Dayton Bar Ass'n v. Parisi,* 131 Ohio St. 3d 345 (2012). The case involved Parisi's actions with respect to Sylvia Demming, a 93-year-old woman who Parisi represented to the Warren Count Probate Court was incompetent, but from whom Parisi took a power of attorney which she used to pay her own fees of $18,820. *Id.* at ¶ 7.

The Supreme Court of Ohio entered judgment March 8, 2012, but the Dayton Bar Association had filed the grievance in August 2009. *Id.* at ¶ 1. The day before the Ohio Supreme Court's decision, Defendant Beck wrote to Defendant Wildermuth in his capacity as Co-Chair of the DBA's Grievance Committee regarding his investigation of complaints against Parisi made by Norma Adams and by Defendant Heck with respect to Katherine LeMoyne (Doc. No. 1-6, PageID 19 et seq.) The same letter relates a conversation in which Defendant Schenk told Beck of the criminal investigation carried out by the Prosecutor's Office, including by Defendant Shaw, which gave rise to a concern that Parisi had engaged in conduct similar to that involved in the Demming case with Royal John Greene and Katherine Lemoyne. Because of Parisi's non-cooperation, Beck recommended a reference to the Probable Cause Panel of the Board of Commissioners for Grievances and Discipline for violation of Ohio Prof. Cond. R. 8.1(b)(5). *Id.* at PageID 26-27.

The second grievance was eventually scheduled for formal hearing before a panel of the Board of Commissioners, but Parisi settled the case with the DBA. The resolution is embodied in the Settlement Agreement Parisi seeks to have set aside in this action (Motion, Doc. No. 22-1, PageID 155-56).

**The DBA Defendants' Motion**

**Absolute Immunity on Money Damages Claims**

The DBA Defendants assert that they are absolutely immune from damages liability for their asserted actions (Motion, Doc. No. 22, PageID 145, citing *Berger v. Cuyahoga County Bar Ass'n.*, 983 F.2d 718, 722 (6th Cir. 1993), and *Bailey v. Columbus Bar Ass'n.,* 25 Fed. Appx. 225, 2001 U.S. App. LEXIS 24479 (6th Cir. 2001)).

In *Berger* the Sixth Circuit concluded that a bar association, its certified grievance committee, and members of the association carrying out grievance committee functions were absolutely immune from money damages because they were carrying out an enforcement function of the Supreme Court of Ohio and thus shared in its judicial immunity. 983 F.2d at 721-22.

Parisi argues that certain allegedly dishonest acts of Defendant Beck vitiate any immunity he may have (Memo in Opp., Doc. No. 25, PageID 174). She argues an invidious motive (which she does not identify) destroys the immunity "just as they [the DBA Defendants] would be liable if they were prosecuting only black attorneys." *Id.* at PageID 170. She asserts the DBA Defendants conspired with the Prosecutor's Office to get complaints against her, as if this would pierce the immunity. *Id.* at PageID 172-73.

The common law absolute immunity of judges was first recognized in this country in *Bradley v. Fisher,* 80 U.S. 335, 355 (1872). It was explicitly extended to actions under 42 U.S.C. § 1983 in *Pierson v. Ray,* 386 U.S. 547 (1967), and *Stump v. Sparkman*, 435 U.S. 349 (1978). "The doctrine of judicial immunity exists 'not for the protection of a malicious or

corrupt judge' but for 'the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequence.'" *King v. McCree,* 573 Fed. Appx. 430, 438 (6th Cir. July 21, 2014), *quoting Pierson*, 386 U.S. at 554.

The immunity is lost only when judges or those who share in judicial immunity act in the clear absence of all jurisdiction. *Pierson, supra* at 362; *King v. Love*, 766 F.2d 962 (6th Cir. 1985); *Schorle v. City of Greenhills,* 524 F. Supp. 821, 828 (S.D. Ohio 1981).

Parisi relies on *Bishop v. State Bar of Texas,* 736 F.2d 292 (5th Cir. 1984). There the district court had dismissed a damages claim as well as an injunctive relief claim on the basis of *Younger v. Harris*, 401 U.S. 37 (1971). The Fifth Circuit noted, correctly, that *Younger* has no application to damages claims. *Id.* at 295. However, the issue of judicial immunity was not raised at all in the opinion. *Berger* is controlling on that question and mandates dismissal of Parisi's damages claims against the DBA Defendants.

*Younger* **Abstention on Injunctive Relief**

The DBA Defendants seek dismissal of Ms. Parisi's request for injunctive relief under *Younger, supra*, specifically relying on *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n.,* 457 U.S. 423, 432 (1982). *Younger* requires federal courts to abstain where (1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims. *Middlesex County, supra*; *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995); *Nilsson v. Ruppert, Bronson & Chicarelli Co.,* 888 F.2d 452, 454 (6th Cir. 1989); *Ohio Civil Rights Com. v. Dayton Christian Schools, Inc.*, 477 U.S. 619 (1986).

Ms. Parisi relies on an exception to *Younger* abstention for proceedings pursued in bad faith or for the purpose of harassment (Memo in Opp., Doc. No. 25, PageID 176-77). She alleges that exhibits attached to the Complaint show that "the second disciplinary complaint against Plaintiff was undertaken both in retaliation and in bad faith." *Id.* at 177. Yet these claims are merely conclusory. She does not allege what the complaint was in retaliation for or how the bad faith manifested itself. What act or acts does she claim she had done which were legally protected but for which she was the target of retaliation? She never alleges, much less provides any evidence of, any invidious or personal or unlawful motive on the part of the DBA Defendants.

Based on the exhibits to the pleadings, there is no doubt that the DBA Defendants obtained a probable cause finding from the Board of Commissioners and the case was set for formal hearing when Ms. Parisi settled it. If the case was completely bogus, why did Parisi settle it with the DBA Defendants instead of presenting her claims to an independent tribunal, none of whom, by rule, come from the same appellate district as Plaintiff? Parisi was represented in the disciplinary proceedings by Attorney Dianna M. Anelli, an experienced ethics attorney who was herself once Assistant Disciplinary Counsel for the Ohio Supreme Court and presumably would not have acquiesced in or recommended accepting a three-year loss of license in the face of charges which resulted from bad faith.

What Plaintiff characterizes as harassment is appropriately seen as persistence in protecting the public from ethical misconduct. Ms. Parisi has not pled a plausible bad faith exception in *Younger* abstention. Her claims for injunctive relief against the DBA Defendants should also be dismissed under *Younger*.

**The Prosecutor Defendants' Motion**

The Prosecutor Defendants assert they are entitled to absolute prosecutorial immunity or to qualified immunity from and damages claims under 42 U.S.C. § 1983 (Motion, Doc. No. 28, PageID 194-97). They assert Plaintiff has not pled a claim for relief under 42 U.S.C. § 1983. *Id.* at PageID 197-204. They note that Plaintiff has pled no policy or custom so as to hold Matt Heck liable in his official capacity. They join the DBA Defendants argument about injunctive relief. *Id.* at PageID 204-05.

In opposing this Motion, Parisi attaches and purports to incorporate numerous documents neither referred to nor attached to the pleadings (See, e.g., Ex. 1 to Doc. No. 32). Pursuant to Fed. R. Civ. P. 12(d), the Court declines to consider these documents and thus convert the pending motion into one for summary judgment. Parisi also makes numerous statements of fact in her Memorandum in Opposition which are unsupported by reference to the pleadings and therefore must not be considered in deciding this Motion.

**Absolute Immunity**

The Magistrate Judge agrees with Plaintiff that the Prosecutor Defendants are not entitled to absolute prosecutorial immunity for their actions complained of in the Amended Complaint. Acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409 (1976); *Burns v. Reed*, 500 U.S. 478 (1991); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Koubriti v. Convertino*, 593

F.3d 459 (6th Cir. 2010). This absolute immunity does not extend to investigatory activity, advising police, or personnel matters. *Burns, supra.*

After investigating Plaintiff, the Montgomery County Prosecutor's Office determined not to present a case to the grand jury to obtain an indictment. Because they never prosecuted Parisi criminally, none of their acts come within the Supreme Court's functional analysis for applying absolute prosecutorial immunity.

**Injunctive Relief**

For the same reasons as given above with respect to the DBA Defendants, the Court must abstain from considering injunctive relief from the Settlement Agreement as requested by Plaintiff.

**Qualified Immunity**

### General Standard

Government officials performing discretionary functions are afforded a qualified immunity under 42 U.S.C. § 1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995);

*Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir. 1994); *Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994). The question is not the subjective good or bad faith of the public official, but the "objective legal reasonableness" of his or her action in light of clearly established law at the time the official acted. *Anderson v. Creighton*, 483 U.S. 635 (1987).

Qualified immunity analysis involves three inquiries: (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005), *quoting Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). Qualified immunity must be granted if the plaintiff cannot establish each of these elements. *Williams ex rel. Allen v. Cambridge Bd. of Educ.*, 370 F.3d 630, 636 (6th Cir. 2004).

In order for the violated right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right; in light of pre-existing law, the unlawfulness of the official's action must be apparent. *Anderson*, 483 U.S. at 640. The right must be defined at the appropriate level of specificity to determine whether it was clearly established at the time the defendants acted. *Wilson v. Layne*, 526 U.S. 603, 615 (1999), *citing Anderson.* The test is whether the law was clear in relation to the specific facts confronting the public official when he acted; the constitutional right must not be characterized too broadly without considering the specific facts of the case. *Guercio v. Brody*, 911 F.2d 1179 (6th Cir. 1990). The contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right. *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir. 1992). Although the very action in question need not have previously been held unlawful, its unlawfulness must be apparent in light of pre-existing law. *Id.* An action's unlawfulness can be apparent from direct holdings, specific examples described as prohibited, or from the general reasoning that a court employs. *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002), *citing Hope v. Pelzer,* 536 U.S. 730 (2002).

The Sixth Circuit's approach in *Burchett* may be too liberal in light of *Plumhoff v. Rickard,* 134 S. Ct. 2012 (2014); *Wood v. Moss*, 134 S. Ct. 2056 (2014); and *Lane v. Franks*, 134 S. Ct. 2369 (2014). In all of these Chemerinsky says the Court held or essentially held that there has to be a case directly in point to overcome qualified immunity by showing clearly established law. *Lane* holds that while a government employee's First Amendment rights are violated when he is fired for giving truthful testimony to a grand jury pursuant to subpoena, the firing officials were still entitled to qualified immunity. In *Taylor v. Barkes*, 135 S. Ct. 2042 (2015), the Court held:

> No decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols. And "to the extent that a 'robust consensus of cases of persuasive authority'" in the Courts of Appeals "could itself clearly establish the federal right respondent alleges," *City and County of San Francisco v. Sheehan,* 575 U. S. ___, ___, 135 S. Ct. 1765, 191 L. Ed. 2d 856, 2015 U.S. LEXIS 3200 (2015) (slip op., at 16), the weight of that authority at the time of Barkes's death suggested that such a right did not exist. See, e.g., *Comstock v. McCrary*, 273 F. 3d 693, 702 (CA6 2001) ("the right to medical care for serious medical needs does not encompass the right to be screened correctly for suicidal tendencies" (internal quotation marks omitted)); *Tittle v. Jefferson Cty. Comm'n*, 10 F. 3d 1535, 1540 (CA11 1994) (alleged "weaknesses in the [suicide] screening process, the training of deputies[,] and the supervision of

14

> prisoners" did not "amount to a showing of deliberate indifference toward the rights of prisoners"); *Burns v. Galveston*, 905 F. 2d 100, 104 (CA5 1990) (rejecting the proposition that "the right of detainees to adequate medical care includes an absolute right to psychological screening"); *Belcher* v. *Oliver*, 898 F. 2d 32, 34-35 (CA4 1990) ("The general right of pretrial detainees to receive basic medical care does not place upon jail officials the responsibility to screen every detainee for suicidal tendencies.").
>
> The Third Circuit nonetheless found this right clearly established by two of its own decisions, both stemming from the same case. Assuming for the sake of argument that a right can be "clearly established" by circuit precedent despite disagreement in the courts of appeals, neither of the Third Circuit decisions relied upon clearly established the right at issue.

*Id.* at 2044-45.

### Application

Ms. Parisi has not shown that she has any clearly established constitutional right that was violated by any act of the Prosecutor Defendants.

**Substantive Due Process**

As the Magistrate Judge understands it, Ms. Parisi asserts that her right to practice law, her chosen profession, is protected by the substantive branch of the Due Process Clause of the Fourteenth Amendment (Memo in Opp., Doc. No. 32, PageID 238).  In support she cites *Bd. Of*

*Regents v. Roth*, 408 U.S. 564 (1972).  In the course of deciding that a non-tenured professor did not have a protected property or liberty interest in his job, the Supreme Court held

> "While this Court has not attempted to define with exactness the liberty . . . guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men."

*Id.*  at 572, *quoting Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).  In *Meyer* the Court recognized the substantive due process right of a teacher of the German language to exercise that occupation in teaching German to an elementary school child in violation of one of the many anti-German statutes passed during World War I.  *Meyer* is still good law and was cited by the Court as recently as June 26, 2015.  *Obergefell v. Hodges*, 576 U.S. ___, 2015 U.S. LEXIS 4250, *25 (2015).  But *Meyer* has never been read as creating a substantive due process right to practice law; admission to the bar was highly regulated at the time *Meyer* was handed down and has become no less so since then without any suggestion this interferes with anyone's substantive due process right to practice a common occupation.

**Procedural Due Process**

Although Ms. Parisi cites no law on the point, the Magistrate Judge takes it as given that a person, once licensed to do so, may not be deprived of the privilege of practicing law without

16

procedural due process. However, she has also cited no clearly established law to the effect that reporting prima facie violations of the Rules of Professional Conduct to a certified Supreme Court grievance committee or even soliciting information about such violations from citizens somehow deprives the accused attorney of due process. As the parties acknowledge, an attorney with unprivileged knowledge of an ethical violation by another attorney is bound to report it to responsible bar authorities. But the reporting does not take away the privilege of practicing law. In Ohio, only the Ohio Supreme Court has that power and its exercise of that power is surrounded by procedural safeguards, all of which were in place in this case. When it came down to exercising her procedural rights, Ms. Parisi compromised and agreed to have her license be inactive for three years, but she was not compelled to agree to that settlement.

**Equal Protection – Class of One**

Ms. Parisi's First Claim for Relief purports to be an equal protection claim under 42 U.S.C. § 1983 for discrimination against her as a member of a class-of-one (Amended Complaint, Doc. No. 3, PageID 74-79).

The Supreme Court has recognized that an equal protection claim can be brought on behalf of a class of one "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), *citing Sioux City Bridge Co. v. Dakota County,* 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336 (1989).

Plaintiff does indeed allege that the "Defendants intentionally treated Plaintiff in a discriminatory and malicious manner different from others similarly situated due to animus against her." (Amended Complaint, Doc. No. 3, PageID 74, ¶ 33.) But the rest of the First Claim for Relief comprises allegations of what the Defendants did to Plaintiff and does not mention any other person supposedly similarly situated who was treated differently. At ¶ 56 she alleges she "was being prosecuted for the same actions typically and commonly done by attorneys in the Dayton area." Which attorneys? At ¶ 59 she mentions an instance of an approved bill in the Butler County Probate Court "in which the very same activities which [sic] for which they contended that the Plaintiff had overcharged . . ." However, the Montgomery County Prosecuting Attorney and the Dayton Bar Association do not investigate matters arising in Butler County. The fact that the Butler County Probate Court may have approved a practice followed by Plaintiff in no way states a claim that any of the Defendants discriminated against her. In ¶¶'s 64, 65, 66, and 67, she reports knowledge of other cases in which persons stole money using powers-of-attorney and were not prosecuted. But none of the other persons mentioned was an attorney and Plaintiff also was not prosecuted criminally.

Because Plaintiff has not pled plausible claims under the Fourteenth Amendment to the effect that any of the Prosecutor Defendants has violated her clearly established rights, their claim of qualified immunity should be upheld and their Motion for Judgment on the Pleadings granted.

**Official Capacity Claims**

Ms. Parisi purports to sue the Prosecutor Defendants in their official as well as their individual capacities.  A suit against a public official in his official capacity is deemed to be a suit against the public entity of which he or she is an employee.  *Brandon v. Holt*, 469 U.S. 464 (1985);  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In this case that is Montgomery County Prosecutor Mathias H. Heck, Jr.  Public entities, including public officials sued in their official capacities, are not entitled to qualified or good faith immunity.  *Owen v. City of Independence, Missouri*, 445 U.S. 622 (1980).

Parisi alleges Heck failed to adequately train or supervise the other Prosecutor Defendants.  However, because they committed no constitutional wrong, he cannot be liable on that basis.

Plaintiff has also pled no policy or custom of Mr. Heck which is unconstitutional and thus has failed to state a claim for unconstitutional policy.  *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 (1978).

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that both Motions for Judgment on the Pleadings be GRANTED and this case dismissed with prejudice.

July 1, 2015.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).